|                                              |                         |
| -------------------------------------------- | ----------------------- |
| UNITED STATES DISTRICT COURT                 |                         |
| DISTRICT OF PUERTO RICO                      |                         |

CARMEN PASTRANA TORRES, et al.,

    Plaintiffs,

    v.

MYRNA ZABALA CARRIÓN, et al.,

    Defendants.

Civil No. 04-2357 (JAF)

**OPINION AND ORDER**

Plaintiffs, Carmen Pastrana Torres, Beatriz Rivera Cruz, and René Rivera Murillo, bring the present action under 42 U.S.C. § 1983 (2006) against Defendants, Corporación de Puerto Rico para la Difusión Pública ("WIPR"), and WIPR's president, Myrna Yolanda Zabala Carrión ("Zabala"), in her personal and official capacities, alleging violations of Plaintiffs' rights under the First Amendment of the United States Constitution. Docket Document No. 1. Plaintiffs seek, inter alia, compensatory and punitive damages, front pay, back pay, and attorney's fees. Id.

Defendants move for summary judgment, Docket Document Nos. 33, 34, 39, and Plaintiffs oppose, Docket Document Nos. 40, 41.

**I.**

**Factual and Procedural History**

Unless otherwise indicated, we derive the following factual and procedural summary from the pleadings and depositions on file. Docket Document Nos. 1, 33, 34, 40, 41, 48, 50.

Civil No. 04-2357 (JAF)                                                    -2-

WIPR is Puerto Rico's public broadcasting company. Until 1996, WIPR was part of the state-owned Puerto Rico Telephone Company. In 1996, the Puerto Rico legislature sold the Puerto Rico Telephone Company to private investors, and made WIPR a separate public corporation that is an "instrumentality of the state of Puerto Rico." 27 L.P.R.A. § 501 (2004). Ninety-four percent of WIPR's budget comes from government assignments.

All three Plaintiffs were employees of WIPR as of August 2004. Plaintiff Pastrana Torres was a Human Resources and Labor Relations Specialist; Plaintiff Rivera Cruz was the Accounting and Budget Supervisor; and Plaintiff Rivera Murillo was the Budget and Finance Deputy Director. All three held career positions.[1]

On August 27, 2004, Plaintiffs Rivera Cruz and Rivera Murillo met with a vice president of WIPR and WIPR's finance and budget director. Plaintiffs Rivera Cruz and Rivera Murillo received a letter signed by Zabala, informing them that the Finance and Budget Office would be restructured so as to segregate the financial and budgetary work into separate departments. Accordingly, Plaintiff Rivera Cruz' title would be changed to Accounting Supervisor, and Plaintiff Rivera Murillo's title would be changed to Finance Deputy

---

[1] In Puerto Rico, public employees are categorized as "career" or "trust" employees. Trust employees may be freely removed, while career employees can be removed only for cause. Colon-Santiago v. Rosario, 438 F.3d 101, 104 n.1 (1st Cir. 2006).

Civil No. 04-2357 (JAF)                                                          -3-

Director.  Both would be stripped of responsibility for any budgetary functions.

On September 1, 2004, at a meeting with a WIPR vice president, Plaintiff Pastrana Torres received a letter signed by Zabala informing her that the Human Resources Office would be restructured, leading to the reclassification of Pastrana Torres' position.

Between August 26 and September 3, 2004, each Plaintiff sent a letter to Zabala expressing his or her dissatisfaction with, inter alia: (1) the secret, rushed, selective, and unilateral manner in which the changes were implemented; (2) the fact that the action took place only two days prior to the commencement of the Puerto Rico electoral ban period;[2] (3) their belief that selective changes were implemented in order to justify the creation of new trust or patronage positions; (4) their belief that the changes violated legal and regulatory provisions; (5) the failure of WIPR officials to consult with the affected employees, who were not given any opportunity to participate in the decision-making process; (6) the failure of WIPR officials to indicate the legal basis for the actions or to notify the affected employees of their rights to request administrative or judicial review; and (7) in Plaintiff Pastrana

---

[2] Puerto Rico law provides a period from two months before until two months after elections during which public authorities may not carry out personnel transactions. 21 L.P.R.A. § 4564 (2005). Because the Puerto Rico general elections took place on November 2, 2004, the electoral ban period ran from September 2, 2004, to January 2, 2005.

Civil No. 04-2357 (JAF)                                                    -4-

1  Torres' case, the lack of uniformity in how salaries corresponded
2  with responsibility levels. Docket Document No. 48-2.
3      On September 23, 2004, Zabala sent reply letters to each
4  Plaintiff, stating that she considered their letters to be
5  disrespectful and in violation of WIPR's personnel manual, and that
6  as a disciplinary measure, each Plaintiff would be suspended from
7  salary and employment. Docket Document No. 23-2. Plaintiff Pastrana
8  Torres was to receive a sixty-day suspension, and Plaintiffs Rivera
9  Cruz and Rivera Murillo were each to receive a forty-day suspension.
10 Id.
11     Zabala's letters to each Plaintiff notified them of their right
12 to an administrative hearing in which they could contest the
13 disciplinary suspensions. Id. All three Plaintiffs requested and
14 received administrative hearings.
15     On November 17, 2004, after the conclusion of the administrative
16 hearings, Zabala sent letters to each Plaintiff executing
17 suspensions. Docket Document No. 43-6. The letters stated that
18 Plaintiffs Pastrana Torres and Rivera Cruz were each suspended for
19 thirty days without pay, and Plaintiff Rivera Murillo was suspended
20 for forty days without pay. Id.
21     On December 10, 2004, Plaintiffs filed the present complaint,
22 alleging that the suspensions violated their First Amendment rights.
23 Docket Document No. 1. On March 18, 2005, Defendants moved to
24 dismiss, arguing that: (1) Eleventh Amendment immunity barred the

suit against WIPR and Zabala in her official capacity, and qualified immunity protected Zabala in her personal capacity; (2) this court should abstain from exercising jurisdiction because of a pending state court action involving the same issues; and (3) Plaintiffs' letters did not constitute protected speech. Docket Document No. 12. Plaintiffs opposed on April 17, 2005. Docket Document No. 15.

On July 12, 2005, we rejected Defendants' Eleventh Amendment and abstention arguments, and converted the remaining issues into a motion for summary judgment. Docket Document No. 23-1. Defendants appealed our Eleventh Amendment ruling on August 9, 2005. Docket Document No. 24. The First Circuit affirmed. Pastrana-Torres v. Corporación De P.R. Para La Difusion Pública, 460 F.3d 124 (1st Cir. 2006).

On April 9, 2007, Defendant WIPR moved for summary judgment. Docket Document Nos. 33, 34. Zabala joined on May 9, 2007. Docket Document Nos. 39, 45. Plaintiffs opposed on May 1, 2007. Docket Document Nos. 40, 41.

**II.**

**Standard For Summary Judgment Under Rule 56(c)**

A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving

Civil No. 04-2357 (JAF)                                                    -6-

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. Id. at 331.

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." Euromodas, Inc. v. Zanella, 368 F.3d 11, 17 (1st Cir. 2004) (citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).

Civil No. 04-2357 (JAF)                                                    -7-

### III.

### **Analysis**

Defendants argue that Eleventh Amendment immunity bars Plaintiffs' suit against WIPR and against Zabala in her official capacity, and qualified immunity protects Zabala in her personal capacity. Docket Document No. 33. We address each argument in turn.

**A.   Eleventh Amendment Immunity**

Defendants assert that Eleventh Amendment immunity bars Plaintiffs' First Amendment claims for monetary damages and declaratory judgment against WIPR and against Zabala in her official capacity. Docket Document No. 33. We previously considered and rejected this argument in the context of Defendants' 12(b)(6) motion, Docket Document No. 23-1, and the First Circuit affirmed, Pastrana-Torres v. Corporación de P.R. Para la Difusión Pública, 460 F.3d 124 (1st Cir. 2006). However, Defendants have presented new evidence in their motion for summary judgment and contend that the record now warrants a finding that WIPR is immune from this suit.[3] Docket Document No. 33.

The Eleventh Amendment provides states with immunity from federal lawsuits by their own citizens or by citizens of other

---

[3] Defendants may introduce new evidence in order to establish Eleventh Amendment immunity at the summary judgment phase, even after they were unable to establish immunity on a motion to dismiss. See, e.g., Misener Marine Const., Inc. v. Georgia Ports Authority, 199 Fed. Appx. 899 (11th Cir. 2006).

Civil No. 04-2357 (JAF)                                                    -8-

states. U.S. CONST. amend. XI; Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). The Eleventh Amendment also bars suits for monetary relief against state officers in their official capacities, because such awards will be paid from the state treasury. Ford Motor Co. v. Dep't of the Treasury, 323 U.S. 459, 464 (1945). Eleventh Amendment immunity applies to states themselves and to entities that are "arms of a state." Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 939 (1st Cir. 1993). The Commonwealth of Puerto Rico is considered a state for purposes of Eleventh Amendment analysis. Jusino Mercado v. Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000); Ursulich v. P.R. Nat'l Guard, 384 F.Supp. 736, 737 (D.P.R. 1974).

The First Circuit has set forth a two-step test to determine whether an entity claiming to be an arm of the state qualifies for sovereign immunity. Pastrana-Torres, 460 F.3d at 126; accord Fresenius Med. Care Cardiovascular Res., Inc., v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 68 (1st. Cir. 2003). The first step inquires whether the state has structured the entity to share in its Eleventh Amendment immunity. Pastrana-Torres, 460 F.3d at 126. This step entails a fact-specific balancing test that examines, among other factors, the control statutorily asserted by the state, how the enabling legislation characterizes the agency, whether the agency performs a public function, and whether the agency has the power to sue and be sued. Fresenius, 322 F.3d at 62-68. If these indicia conclusively demonstrate that the state has structured

the entity to share in its immunity, then the Eleventh Amendment applies. Id. If the indicia are inconclusive, the second step considers the risk that damages will be paid from the state's treasury if the entity is found liable; if so, the entity is entitled to immunity. Id.

In the present case, WIPR operates with a significant degree of autonomy from the Puerto Rico government, and is empowered to sue and be sued, to enter into contracts, to acquire and maintain property, and to raise revenues. 27 L.P.R.A. §§ 501-04. However, several factors point towards control by the Commonwealth of Puerto Rico: WIPR is bound by Puerto Rico's Administrative Procedures Act; is governed by a Board of Directors made up of government officials and political appointees; and must submit reports to the Governor and the legislature. 27 L.P.R.A. §§ 503-05. Therefore, it is not clear that the Commonwealth of Puerto Rico has structured WIPR to share in its immunity. Pastrana-Torres, 460 F.3d at 127.

Because the first step is inconclusive, we must consider whether the Commonwealth would be liable for a judgment against WIPR. Although the Puerto Rico legislature has never committed to providing all of WIPR's budget or covering unforeseen expenses, 27 L.P.R.A. § 21, the Commonwealth may have de-facto assumed this responsibility by substantially funding WIPR. See Pastrana-Torres, 460 F.3d at 128. Indeed, Defendant has produced an affidavit from the Director of the Legal Division of WIPR indicating that approximately ninety-four

percent of WIPR's annual budget comes from Government assignments. Docket Document No. 34-5. This evidence demonstrates that state funds would be the likely source of any judgment against WIPR. See 17A J.W. Moore et. al., Moore's Federal Practice - Civil § 123.23 (Matthew Bender 3d ed.) ("If the state substantially funds the entity, those funds would be a probable source of any judgment against the entity."); cf. Fresenius, 322 F.3d at 75 (finding no immunity where entity received "significant but diminishing state funding" amounting to only twenty-six percent of its revenue).

Consequently, we find that Eleventh Amendment immunity bars Plaintiffs' suit against WIPR and against Zabala in her official capacity.

**B.   Qualified Immunity**

Zabala argues that she is entitled to qualified immunity. Docket Document No. 39. Animating the qualified immunity doctrine is the principle that where a state official's duties require action that does not implicate clearly-established rights, the public interest is better served when the officials may act without fear of future liability. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). We employ a three-step inquiry to determine whether Defendants are entitled to qualified immunity, asking: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly

established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Pagán v. Calderón, 448 F.3d 16, 31 (1st Cir. 2006).

### 1. Do Plaintiff's Allegations Establish a Constitutional Violation?

As a threshold matter, Plaintiffs must demonstrate that Zabala is a state actor. Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995). Defendants argue that Zabala's actions should not be considered "state action" for purposes of liability under 42 U.S.C. § 1983. Docket Document No. 33. However, as an arm of the state, WIPR is a state actor; therefore, WIPR's employees are state actors. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982); Sims v. Jefferson Downs Racing Ass'n, Inc., 778 F.2d 1068, 1076 (5th Cir. 1985).

Next, Defendants argue that Plaintiffs' letters were not protected by the First Amendment. Docket Document No. 33. Courts employ a three-part test to determine the scope of free speech protection available to government employees. Mullin v. Town of Fairhaven, 284 F.3d 31, 37 (1st Cir. 2002). First, we must determine whether the speech involved "matters of public concern." Id. (citing Connick v. Myers, 461 U.S. 138, 147-48 (1983)). Second, we balance the plaintiff's and the public's First Amendment interests against

the government's efficiency interest. Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). Third, if the First Amendment interests prevail in the balancing test, the plaintiff must demonstrate that his speech was a "substantial or motivating factor" in the adverse employment decision. Id. The government may then attempt to show, by a preponderance of the evidence, that the plaintiff would have suffered the adverse decision even in the absence of the protected conduct. Id. (citing Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The first two steps are legal determinations, while the third is a factual question that typically belongs to the jury. See Nethersole v. Bulger, 287 F.3d 15, 18-19 (1st Cir. 2002); McDonough v. Trustees of Univ. Sys. of N.H., 704 F.2d 780, 781 (1st Cir. 1983). Therefore, at this stage, we consider only the first two steps.

Defendants contend that Plaintiffs' letters did not implicate the First Amendment because they did not address matters of public concern. Docket Document No. 33. To determine whether an employee's speech addresses a matter of public concern, courts look to the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. Employees need not raise their concerns in a public forum; even internal memoranda are protected. Torres-Rosado, 335 F.3d at 11-12.

The First Circuit has held that allegations of corruption or improper political influence constitute the sort of public concern

protected by the First Amendment. <u>Guilloty Perez v. Pierluisi</u>, 339 F.3d 43, 52 (1st Cir. 2003) (finding public concern prong satisfied by police officer's statements alleging corruption and perjury and suggesting that Special Investigation Bureau was mishandling investigation); <u>Torres-Rosado v. Rotger-Sabat</u>, 335 F.3d 1, 11-12 (1st Cir. 2003) (finding public concern prong satisfied where Special Investigations Bureau agent alleged that investigation was derailed by political connections); cf. <u>Tang v. R.I. Dep't of Elderly Affairs</u>, 163 F.3d 7, 12-13 (1st Cir. 1998) (finding that employee's grievances concerning, inter alia, being placed on brief paid administrative leave, having workspace relocated, and having file cabinet moved, did not implicate First Amendment).

The First Amendment also protects "mixed speech" that touches on both personal and public matters. <u>Connick</u>, 461 U.S. at 149 (finding public concern prong satisfied in employee questionnaire where one question out of fourteen touched upon a matter of public concern); <u>Banks v. Wolfe County Bd. of Ed.</u>, 330 F.3d 888, 894-96 (6th Cir. 2003) (finding public concern prong satisfied by job applicant's complaint letters objecting to fact that she was not hired, and alleging nepotism and failure to follow state employment laws); <u>Stroman v. Colleton County Sch. Dist.</u>, 981 F.2d 152, 156-58 (4th Cir. 1993) (finding public concern prong satisfied by teacher's letter objecting to new payment method and alleging mismanagement of public funds). Courts must consider a single expression of speech, such as

Civil No. 04-2357 (JAF)                                              -14-

a letter, in its entirety, even though some aspects may concern only personal grievances. <u>Stroman</u>, 981 F.2d at 157.

In the instant case, we find that Plaintiffs' correspondence constitutes mixed speech, touching on both matters of public and private concern. Each Plaintiff expressed his or her personal dissatisfaction with the secret, rushed, unilateral manner in which the changes were implemented and the lack of consultation with the affected employees.  However, Plaintiffs' letters also addressed matters of public concern.  They alleged that the personnel actions violated legal and regulatory provisions, including Puerto Rico's merit principle, an anti-discrimination provision for public employees.[4] <u>Docket Document No. 48</u>.  They also complained that the actions took place only two days prior to the Puerto Rico electoral ban period, and that they only affected appointees of the prior administration. Plaintffs' letters thereby suggested political discrimination, a practice that is itself prohibited by the U.S. Constitution. See <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 75 (1990).  Plaintiffs, thus, implicated the public interest by accusing a government agency of corruption and failure to follow Puerto Rico

---

[4] Puerto Rico's merit principle states that "all public employees shall be selected, promoted, retained, and treated in all matters concerning their employment based upon their capability and without discrimination for reason of race, color, gender, birth, age, social condition or origin, political or religious beliefs, veteran status, or physical or mental disability."  3 L.P.R.A. § 1461 (2006).

Civil No. 04-2357 (JAF)                                                    -15-

and United States law. See Guilloty Perez, 339 F.3d at 52; Torres-Rosado, 335 F.3d at 11-12.

Consequently, we find that Plaintiffs' letters satisfy the public concern step of the First Amendment test, and we turn to weighing the government's efficiency interests against Plaintiffs' First Amendment interests.

Defendant has not contended, nor do we find, that the government's efficiency interests outweigh First Amendment concerns. See Docket Document No. 33. Plaintiffs' letters sought to expose and denounce alleged government corruption, a goal that receives a high degree of First Amendment protection. See Guilloty Perez, 339 F.3d at 53; O'Connor, 994 F.2d at 915.

On the other side of the balance, the government's interests are generally high in law enforcement agencies, where loyalty and discipline are particularly important, and lower in other types of government agencies. Compare Conaway v. Smith, 853 F.2d 789, 798 (10th Cir. 1988) (finding relatively low governmental interest in maintaining order in building inspection agency) with Guilloty Perez, 339 F.3d at 52-53 (finding high governmental interest in maintaining order in law enforcement agency). Because WIPR is not a law enforcement agency, the need for loyalty is not inherently high. Moreover, WIPR has not demonstrated that Plaintiffs' letters caused any disturbance in the workforce. See O'Connor, 994 F.2d at 916.

Therefore, we find that the balancing test weighs in favor of Plaintiffs.

Because Plaintiffs have alleged that they were suspended in response to their protected speech, we conclude that Plaintiffs have alleged a First Amendment violation.

### 2.  **Was The Right Clearly Established?**

To determine whether a right was clearly established, courts may look to whether then-existing case law "gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." Suboh v. Dist. Attorney's Office of Suffolk, 298 F.3d 81, 93 (1st Cir. 2002). Defendants may be on notice that their conduct violates clearly established law even in novel factual scenarios. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

Rivera-Jimenez v. Pierluisi, decided by the First Circuit in March 2004, held that retaliation against public employees for speech on questions of public concern was unconstitutional, and that the unconstitutionality was clearly established for purposes of the qualified immunity inquiry. 362 F.3d at 95. The Rivera-Jimenez court specifically determined that the defendant Department of Justice officials were not entitled to qualified immunity after allegedly retaliating against employees for raising the possibility of corruption in a government agency. Id. However, the First Circuit articulated the First Amendment right more broadly, citing

Supreme Court cases that had held conditioning employment on political patronage or political beliefs to violate the Constitution. See id. (citing Rutan, 497 U.S. 62 (1990) and Branti v. Finkel, 445 U.S. 507 (1980)).

The instant case is factually similar to Rivera-Jimenez, since both cases involve retaliation against public employees who accused a public agency of corruption. See 362 F.3d at 94. Plaintiffs in the current case also suggested that the adverse employment actions were motivated by political patronage. See Docket Document No. 48-2. This, too, falls within the ambit of the First Amendment protection articulated in Rivera-Jimenez. Because Rivera-Jimenez was decided before the actions in the current case, and because it articulated the First Amendment rights broadly enough to cover the violations alleged by Plaintiffs, we find that Zabala had fair warning that her actions would violate Plaintiffs' constitutional rights.

### 3. **Would a Reasonable Officer in Zabala's Position have Understood that She was Violating Plaintiffs' Rights?**

Although we have determined that Plaintiffs have established a violation of their clearly-established First Amendment rights, Zabala would still be entitled to qualified immunity unless "a reasonable officer, similarly situated, would understand that the challenged conduct violated [the] established right." Suboh, 298 F.3d at 90.

All three Plaintiffs clearly accused Zabala of violating rules and regulations governing the job classification process in Puerto

Rico, and argued that the personnel changes were suspicious because they were made only two days before the commencement of the electoral ban period. See Docket Document No. 48-2.  Although Plaintiffs also included personal grievances, the portions of their letters that dealt with issues of public concern were clear and unambiguous. See id.  Defendants have not demonstrated that a reasonable official in Zabala's position would have been unaware that she was violating the First Amendment when she suspended Plaintiffs in response to their accusations.  See Mihos v. Swift, 358 F.3d 91, 110 (1st Cir. 2004).

Consequently, Zabala is not entitled to qualified immunity.

**IV.**

**Conclusion**

For the reasons stated herein, we **GRANT IN PART** Defendants' motion for summary judgment, Docket Document Nos. 33, 34, 39, with respect to damages claims against WIPR and Zabala in her official capacity, and we hereby **DISMISS** those claims **WITH PREJUDICE**.  We **DENY IN PART** Defendants' motion for summary judgment with respect to claims against Zabala in her personal capacity.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 14th day of December, 2007.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U. S. District Judge